Chief Justice Bibb
delivered the Opinion of the Court.
This writ of error is prosecuted to a decree of the circuit court, which gave relief to the complainant, by rectifying a mistake, committed by the person applied to for the purpose of drawing the writings upon a sale of land, by which the notes for the purchase money, omitted to state they were payable in the paper currency of the State, under an impression by the writer, that as the notes only called for dollars, and not for lawful money, they would conform to the contract and intention of the parties.
The bill charges that the contract was for the sale and purchase of one hundred and nine acres of land, (excepting a burying ground,) for the price of six hundred dollars, payable in the paper of the Bank of the Commonwealth, then greatly depreciated, to nearly two dollars of paper for one of silver; that at the time of the contract, this paper was the common, and indeed, almost the only circulating medium in the State; that Mr. Lerty was called upon to draw the writings, and by mistake, or accident, or not knowing that it was necessary to insert in the notes that they were payable in paper of the Bank of the Commonwealth, he drew them for dollars, omitting to say what kind of money; that the contract was explicitly for the payment in that paper; that the notes were dated all on the 28th of January, 1822, four in number, payable at different periods, amounting together to sixjhundred dollars; that afterwards, in July 1822, the complainant Proctor, paid one hundred dollars in paper, which the defendant then received without difficulty, and promised'to credit the amount on the note then due, which he had not with him, but has credited the amount as of the 16th July, but omitting the year; since which time, the defendant has refused to receive paper, and fraudulently taking advantage of the mistake and error, has obtained judgments at *312 law, and is endeavoring to coerce the full amount in silver. &c.
Answer, denying the alleged mistake.
Case of Baugh and Ramsey, 4th Monroe, dobs not decide there can be no relief against a mistake in drawing a covenant for dollars instead of Bank notes.
Cases for the jurisdiction for relief against the mistake.
Parol evidence admissible to prove the mistake.
The answer does not deny that the paper was the common circulating medium of the'country at the date of the contract; omits to respond as to the payment in July 1822, but denies mistake, want of skill in the draftsman, fraud in himself, or that the contract was for payment in Commonwealth’s paper, “or in any thing but current money, or that the contract was for any thing less than six hundred dollars in specie;” the answer does not deny the depreciation of the currency at the time of the contract.
It is supposed that there can be no relief in equity, by parol proof of a mistake, in opposition to the language of the writing and against the positive denial of the answer, and the case of Baugh vs. Ramsey is relied on. That case is misunderstood by the gentlemen of the profession, if they suppose there is any such principle to be extracted from it. That case requires strong and satisfactory proof against the writing and tiie answer; it gives to both clue weight, according to the uniform language of the chancellors upon the subject, and it decided that the proof in that case did not come up to that degree of satisfactory proof which is requisite.
The case of Lyman vs. the United States’ Ins. co. (2 John. ch. cases, p. 632) was decided against the relief sought, for want ofthe requisite evidence of any agreement of the parties different from that contained in the written policy of insurance. Chancellor Kent, in that case, affirms the power of the court to relieve outhe ground of mistake, but denied the relief, because the mistake was not made out in a clear and decided manner, and to the entire satisfaction of the court. But in a previous case of Gillespie and wife vs. Moone, (2 John. ch. cas. p. 593,) after full and able discussion by the bar, chancellor Kent, with his usual ability and research, examines the question upon principle and precedents, and places the power of the court beyond doubt, by reason and precedents in number both ancient and modern. He says, “I have looked into most, if not all of the cases on this branch of equity ju *313 risdiction, and it appears to me to be established, and on great and essential grounds of justice, that relief can be had against any deed or contract in writing founded in mistake, or fraud. The mistake may be shown by parol proof, and the relief granted to the injured party, whether he sets up the mistake, affirmatively by bill, or as a de-fence.”
Casds in England before ’T6 and since.
Cases in Eng. land stated.
The cases are very numerous, before, and since 1776, in England, and in the United States, where, upon bills for specific performance, the defendants have been permitted to destroy the equity of the bill by parol proofs, and also where relief has been granted affirmatively, on behalf of complainants upon parol proof, of mistakes in bonds, articles of agreement, policies, mortgages, bargains and sales, deeds and other writings, and where the principle that parol proof was competent to show the mistake , and set up an agreement contrary to the writing, has been admitted, ahhough the relief has been denied, because the parol proof was not sufficiently satisfactory, or the transaction was stale. The cases are arranged under these respective heads by chancellor Kent, in greater number than is altogether allowable 10 this court, under the statute against citation of cases decided in Great Britain since 1775, all of which will be found in the case of Gillespie vs. Moone.
In Bingham vs. Bingham, (1 Vez. senr. case 74 p. 137,) a decree was founded on a plain mistake, although no fraud appeared.
In Joynes vs. Stethan, (3 Atk. case 129 p. 329) lord Hardwicke permitted evidence of a mistake in omitting in the writing a part of the agreement, that the tenant should pay the rent clear of taxes, and upon the parol proof so admitted the bill was dismissed. The chancellor said he was very clear the proof ought to be read.
In Legal vs. Miller, Vern. case, 99, p. 299,) Sir John Strange, master of the rolls, dismissed a bill on parol proof of an agreement different from the written agreement. He declared such evidence was *314 frequently admitted to be read, especially to rebut an equity.
In Pitcairne vs. Pitcairne, (2 Vez. senr. case 122, p. 376,) parol evidence was admitted to show that although the written agreement was for an annuity of £150, yet the true agreement was for but £100; the relief however was denied, because there was no mistake, but a secret underhand-agreement, to draw in another party, to do more than otherwise he would, was the cause of inserting the £150 instead of the £100, as the annuity. In this is cited the case of—
South Sea Company vs. D. Oliff, where six months were inserted in place of two, the instrument was drawn and executed in a hurry; upon discovery of the mistake, the party injured, brought his hill to rectify the mistake, and have two inserted, according to the true agreement, and lord chancellor King decreed accordingly, upon parol evidence. The court said parol evidence must he admitted to prove the variation of the written, from the true agreement, otherwise “if it could be got in black and white, there would be no relief.”
In Simpson vs. Vaughan, (2 Atk. case 21, p. 32,) Lord Hardwick said there was “a reasonable presumption that this bond was either through fraud, or for want of skill, made a joint, instead of a joint and several bond, for Baker; one of the obligors, who filled it'up, is only a tradesman, and entirely unacquainted with the common form of bonds, where money is lent to two persons; hut I do not think it was a fraud in Baker, but merely a mistake, and this is a head of equity on which the court always relieves.” And accordingly the party was relieved upon the mistake, and placed in the state as he would have been, if the bond had been a joint and several bond.
In Langley vs. Brown (case 162, 2 Atk. p. 203,) Lord Hardwick said, “the third ground of relief is mistakes and misapprehensions in the drawer of deeds contrary to the design of the parties, and to be sure, this is as much a head of relief, as fraud and imposition.” Relief was not granted, however; he could not find sufficient proof.
*315 In Baker vs. Payne, (1 Vez. senr. case 191, p. 458,) Lord Harwicke relieved a complainant, by parol proof, that the written agreement varied from the tree agreement of the parties, and by a mistake of the drawer; it was objected by defendant, that “by this means the mere allegation of a mistake, will let in parol evidence, in contradiction to any agreement, and defeat written acts.” The chancellor said, “how can a mistake in an agreement be proved but by parol evidence? It is not read to contradict the face of the agreement, which the court would not allow, but to prove a mistake therein, which cannot otherwise be proved, it may therefore, be read,” and the agreement was accordingly rectified.
In Henkle vs. Royal Exchange Company, (1 Vez. senr. case 156, p. 318,) the bill was to rectify a policy of insurance after a loss had actually happened, upon the ground that the written policy had mistaken the intent of the parties to the agreement. Lord Hardwick, in delivering the decree said, “no doubt, but this court has jurisdiction to relieve in respect of a plain mistake in contracts in writing, as well as against frauds in contracts, so that if reduced into writing, contrary to the intent of the parties, on proper proof, that would be rectified.” But in that case he did not relieve for want of the proof sufficient to establish the agreement to have been different from the writing; two witnesses only being examined, and they differing as to the agreement, and the application being in the harshest case that could happen, after the loss had been ascertained, in such, case after actual loss, the chancellor said, there ought to be the strongest proof possible.
In Washburn vs. Merrills, (1 Day’s ca. in error, 139,) the Supreme Court of Connecticut, gave relief to a mortgagor, who had by mistake executed an absolute deed. The mortgagee got into possession, and the bill being brought to rectify the mistake, and to redeem against the mortgagee and against a purchaser under the absolute deed; the answer set up the absolute deed, and relied on the statute of frauds; parol proof of the mistake was offer *316 ed, objected to, and admitted, and the deed, established as a mortgage;- the decree of the inferior court was unanimously affirmed on appeal.
It is the svt-f tied law, that redacinVa-greeinenis to writing, is a. teadrisfdiO'U1' tion, and pa-rol evidence to°°rove ft'e' mistake. ™
In the case of Gillespie vs. Moone, relief was actually given against the written instrument upon parol evidence of the variance of the written instrument from the agreement of the parties; and many more of like kind are cited by the chancellor. So in Breathitt vs. M’Curdy, decided in this court.
It is then to he taken as settled, by the concurring opinions of Hardwick, Thurlow, Strange, Eldon, Kent and other judges, that Mistake is a head of equity jurisdiction, as clearly settled as in cases of fraud and trust, and that parol testimony is admissible to establish the mistake. It has been the constant language of courts of equity, that parties can be relieved in cases of writings founded in mistake, as well as in cases of fraud. It would be a Sreac defect ln the jurisdiction of courts of equity, and in the moral action of their powers, if there was to be no relief because of the mistakes or misapprehensions in the drawer, or of the parties, if there was to be no relief, if an agreement variant from the true one could he got in back and white. The rule at law is, that the writing does, in com-templation of law, contain the true intent of the parties; that the writing furnishes better evidence of the sense and understanding of the parties, than can be supplied by parol. But equity has a broader jurisdiction, and will open the writing to let in an equity founded on facts distinct from, the written agreement, and from its sense and construction. The court however, will always receive the paro] proof without forgetting to what extent the answer of one of the parties admits or denies the intention, and giving due regard to the answer; but wherever the answer is overcome by the parol proofs, and the mind of the court is satisfied as to the mistake in reducing the agreement of the parties into writing so as not to express their true intent and understanding, the court can, and ought to rectify the mistake, and prevent the one party from taking a fraudulent or oppressive advantage of the mistake.
Evidence on the part of the oom-tlbiLhiMthe mistake,
The proof in this case clearly establishes the mistake ■ as charged in the bill. William JB. Lerty, esq. who was called by the parties to draw the writings, and whose general character for truth and veracity, all who speak of him (as well those examined by the defendant, as those on part of the plaintiff,) declare.to be unexceptionable, states that he was informed by the parties, that the land was sold for six hundred dollars, payable in Commonwealth’s paper. He drew the notes divided into different sums, and times of payment, as directed by the parties; and drew also a bond in a penalty conditioned for the conveyance of the tract of land of 102 acres, • (excepting the grave yard;) the notes were executed by Proctor, and the penal bond by Inskoe. He accounts for his omission of the paper of the Bank of the Commonwealth, in drawing the notes, thus; then he drew specie notes, his practice was to insert good and lawful money, because he considered nothing good and lawful money but gold and silver. The paper of the Bank of-the Commonwealth he did not consider good and lawful money. By omitting good and lawful money, and calling for dollars only, he supposed the notes conformed to the contract. When this explanation is connected with the fact asserted and not deneid, that at the time the paper of the Bank of the Commonwealth, w’as the genera] and almost the only circulating medium, it is satisfactory as to the cause of the omission. Mrs. Mary Lerty states that a few days before Inskoe sold the land to Proctor, she was requested by Inskoe to send word to Proctor, that he would let him have the land for six hundred dollars in Commonwealth’s paper, and give him his own time for payment, she did so; and a few days after the sale, she was informed by Inskoe he had sold to Proctor, for six hundred dollars in Commonwealth’s paper. Christopher Disher states, that on the same day that the contract was closed, Inskoe informed the witness, at Inskoe’s house, that he had sold to Proctor for six hundred dollars in Commonwealth’s paper. Notley Proctor states, that in July, 1822, he was present when his brother, Daniel Proctor, paid to the defendant one hundred *318 dollars, fifty in notes of the Bank of the Common" wealth, and” fifty in notes of the Bank of Kentucky; this latter, Inskoe at first refused, stating that the contract was for paper of the Bank of the Commonwealth, but upon being told by Aaron Owens, that the paper of the Bank of Kentucky, was better than the paper of the Bank of the Commonwealth, Inskoe received it; he had before that time told the witness, that the contract was for six hundred dollars in Commonwealth’s paper. Walker Clarke states that in the winter 1822, Inskoe told him he sold the land to Proctor for six hundred dollars in Commonwealth’s paper. John H. Rudd states, that before inskoe sold the land to Proctor, he told him that lie would take Commonwealth’s paper, and some short time after he had sold to Proctor, Inskoe told the witness, if any more paper of the Bank of the Commonwealth was issued, it would ruin him in his sale to Proctor. Willis Chick states, that in February, 1824, Inskoe told him, he had sold his land to Proctor for six hundred dollars in common currency of the State, but it had so depreciated he must have specie. By the testimony of seven witnesses of unimpeached character, thus deposing, it appears that the contract was for paper of the Bank of the Commonwealth. It also appears without contradiction, that at the date of the contract, the depreciation of the Commonwealth’s paper was at one dollar sixty-six cents, for one dollar specie; when the first note fell due, the depreciation was one dollar seventy-five cents, for one specie; when the second note fell due, the same; when the third note fell due, it was at two for one; and when the fourth note fell due, at two for one. It appears by the testimony of Lerty and of Clarke, that at the sale, six hundred dollars Commonwealth’s money was tire utmost value of the land; and by Doniphan, Thompson and Iiudd, that the utmost value in specie was two dollars fifty cents per acre. So that six hundred dollars in paper, at its greatest depreciation, and upon the credits given, was a high price. The value in specie was not m’ore than two hundred and seventy-two dollars, fifty cents; and no man of common prudence, and in his senses, would have agreed to pay six hundred dollars in specie for it.
Testimony on the part oí the defendant.
To this volume of testimony, given by persons of unimpeached veracity and character, the defendant has opposed the testimony of Win. Owens and Thos. Williams, who state, the land in their judgment, was worth “five or six hundred dollars,” in gold or silver. They, however, state that the land was generally hilly, stoney, fencing out of repair, fields infested with briars and shrubs. Tire witnesses on part of the plaintiff, were near neighbors and intimately acquainted with the tract of land; to their testimony as to value, the preponderance is due, as well from number as from their particular knowledge of the tract, and from the circumstances; as to Mr. Vincent’s statement, that he would have been willing to give six hundred dollars for the land in 1819, as land was then high, it cannot avail; that was three years before the contract; he expressly states he cannot tell the value, for he has been a non-resident ever since the year 1820. Secondly: as to the contract, Daniel M’Grohon states that about Christmas, 1823, complainant and defendant were at his house; he observed, he thought defendant had made a bad sale, “that be knew he had been offered a short time before, $G00 in gold and silver in hand, and was about to take $600 in paper;” complainant replied he was to give $600 in good money; he asked complainant if he had not paid one hundred dollars in paper, he replied he had, but was bound for good money. This witness states, that at Inskoe’s house, he told Inskoe, he had fooled away his land. Why, said Inskoe? Witness said, because he would have to take Commonwealth’s paper; defendant said no, his bargain was for dollars, his notes called for dollars, he looked for good money. This witness seems to have well understood that the contract was for paper, and inskoe began to play upon the word dollars, hut had not then brought his mind .to say the contract was for gold and silver. Aaron Owens states, that in November or December, 1823, he heard Proctor say he was then bound to Inskoe, for five hundred dollars in good money, which he did not think ho could pay in five years. This is Mr. Owen’s second deposition, taken 30th December, 1824. in *320 bis second deposition, taken 28th January, 1824, Mr. Owens stated, that he was present at the time referred to, in 1822, by Notley Proctor, when the money waspaid, how much he cannot state; some conversation did take place at that time, but he cannot detail it; that a few days after the sale, Inskoe told him he had sold for six hundred, dollars, witness asked what kind of money; Inskoe replied, the notes were drawn for dollars, and there was nothing said at the time the writings was drawn, what kind of money. Nathaniel Owens states, he was present in November or December, 1824, and heard the same conversasion related by his brother Aaron, in which Proctor said, he was then bound for five hundred specie dollars to Inskoe. When the depositions of Owens and M’Gohon, as to Inskoe’s play upon the word dollars in the note, and Mr. Rudd’s statement, that Inskoe was apprehensive of depreciation if more paper was issued, and furthermore, that before Inskoe had told him, he expected that the Commonwealth’s Bank would be as good as specie in a short time, are compared as to the dates of those declarations, and then compared with the time of Proctor’s statements to Owens in November or December, 1824, the whole is explained. The depreciation had increased from the time of the contract, instead of decreasing, as Inskoe expected; he had played upon the word dollars in the note, until he had brought his mind to believe he could get specie; he had sued for, and had actually obtained judgments on three of the notes, for specie before these conversations. Proctor had found out that he was bound by the notes for specie; for his bill in this case was filed in July, 1824, for relief against the judgments at law; upon which Inskoe had previously caused the personal property of Proctor to be sold under execution, at two years credit for specie. These declarations of Proctor, thus made, weigh nothing against the proof of the contract, by the witnesses on the part of the plaintiff.
Discussion of the tes timo-ny offered to contradict com^ witnesses!
*320 As to the attempt to make an attack upon the credit of Mr. Lerty, it can weigh nothing. Mr. Lerty’s deposition was taken first informally, with oth *321 ers, they were not returned, the court gave leave to retake them. Mr. Lerty’s deposition as taken, states the circumstances minutely; he was called to by the parties across the North Fork of Licking, he went over to them, the contract was stated to him as for six hundred dollars in Commonwealth’s paper, he was requested to draw the vyritings. When he went to the house, he asked what way the notes were to be drawn. From this, the attempt is made to infer, he did not before know any thing about the contract. Mr. Jones, who was examined by defendants, explains that, when to that question the parties told him for six hundred dollars, he replied, he meant by his question how the sum was to be divided. The attempt is made to prove he could not have gone over in a canoe, because the North Fork was frozen, that fails. Sally Inskoe stated, she walked over upon the ice, about a quarter of a mile above Lerty’s the same day the writings were drawn, but upon being asked on what day that was, she does not know; except that Amy Proctor told her so, and she cannot recollect the year. Dorah Mitchell says, the North Fork was frozen 10th or 15th January, 1822; but the contract was drawn the 28th January, 1822.^ If Mr. Lerty’s first deposition was as circumstantial as the last does not appear. It is stated by several witnesses, that at the time his first deposition was taken, he did state that Inskoe did not tell him that the contract was for paper, but that Proctor did. It will be perceived, that the witnesses do not pretend to relate the whole of Mr. Lerty’s first statement, but single out a particular expression. Whether Proctor or Inskoe, related the contract when they called him across the North Fork, each being present and assenting, cannot be very important; it does dot appear that Mr. Lerty’s mind was drawn to such a distinction. His statement of why he emitted to express Commonwealth’s paper in the notes, is rational, corroborated by the penal bond drawn and executed at same time, conditioned for conveyance of the land, in which the penalty is drawn for good and lawful money; besides, the very witnesses who are brought to state this single part of his de *322 position, or his statement at the time, all agree that he is a man of character, truth and veracity, unim-peached; his statements of the contract is corroborated by six other witnesses; and by the value of the land compared with the price in Common-W'ealth’s paper, and by the specie value of the land.
Found, on the evidence, that the mistake is proved, and decree granting the relief affirmed.
Brown, for plaintiff; Crittenden, for defendants.
The mistake is proved to the satisfaction of a court of conscience, and it is unconsoientious in In-shoe to insist on it, unless there is to be no relief where a contract gets into black and white, howsoever great the mistake in committing it to writing; there should be relief in this case.
Decree affirmed with costs.